UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JOANNA MARIA SMITH RIDDLE )
)
V. ) NO. 2:14-CV-130
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income were administratively denied after a hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 13]. The defendant Commissioner has filed a Motion for Summary Judgment [Doc. 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 53 years of age at the time of her alleged onset of disability on November 24, 2010. She is presently 57, having been born on April 30, 1957.

Plaintiff's medical history is partially set forth in the Commissioner's brief as follows:

> Plaintiff received treatment in 2010 at the Church Hill Health Department (Church Hill) (Tr. 257-64). In September 2010, Plaintiff reported fibromyalgia pain in her back, hips, thighs, and shoulders (Tr. 255-56). Except for reduced range of motion in the low back, a physical examination was normal (Tr. 255).
> Later in September 2010, Plaintiff requested medication refills and reported that her fibromyalgia pain was worse (Tr. 253-54). She complained of muscle aches and joint pain and said stood all day at work as a cashier (Tr. 253). On examination, she displayed tender points in her back, neck, and hips (Tr. 253). The next month, Plaintiff continued to report depression and musculoskeletal pain (Tr. 249-50). A physical examination was normal (Tr. 249).
> In November 2010, Plaintiff fell while stepping out of a Jacuzzi tub (Tr. 247). She ultimately admitted that she fell on purpose in order to give her a "better work excuse" than depression (Tr. 228, 248). On examination, Plaintiff was crying and appeared "stressed out" (Tr. 247). She was sent to the emergency room, where she appeared tearful but denied thoughts of suicide (Tr. 224-25, 248). A physical examination and a right arm x-ray were normal (Tr. 225-26).
> The next month, Plaintiff was diagnosed with depression and anxiety and received a global assessment of functioning (GAF) score of 45 (Tr. 228). Plaintiff said she had been struggling to go to work "for some [time]" due to anxiety and difficulty dealing with people (Tr. 228).
> Later in December 2010, Plaintiff went to Frontier Health for mental health treatment (Tr. 227, 234-36). She reported depression, anxiety, and fibromyalgia pain (Tr. 227). On examination, Plaintiff's memory, insight, and judgment were intact, and she did not appear to be psychotic (Tr. 235). She appeared depressed and

2

received a GAF score of 55 (Tr. 235). Plaintiff received medication for depression and insomnia (Tr. 235).

In March 2011, Plaintiff returned to Frontier Health for medication management (Tr. 232-33). She denied depression, sadness, and crying spells, and said she did not have anxiety or panic attacks (Tr. 232). On examination, her mood was euthymic and her affect was normal (Tr. 232). Plaintiff's medications were adjusted to treat a complaint of insomnia (Tr. 232).

Later that month, at Church Hill, Plaintiff sought treatment for an ear ache and sore throat (Tr. 244-45). She also reported that her fibromyalgia and arthritis pain was worse, and she indicated that she was seen at Frontier Health for this (Tr. 245).

Plaintiff returned to Frontier Health in June 2011 for medication management (Tr. 230-31). She reported taking her medications as prescribed, and she denied any untoward side effects (Tr. 230). She denied depression, sadness, crying spells, and she denied anxiety and panic attacks (Tr. 230). She said she had been sleeping well with her adjusted medications (Tr. 230). She reported pain from fibromyalgia and arthritis, and she said she did not "have any energy," which she attributed to fibromyalgia (Tr. 230). On examination, she appeared to be in pain and her mood appeared dysphoric (Tr. 230).

The next week, at Church Hill, Plaintiff asked to be rechecked for rheumatoid arthritis and lupus (Tr. 241). She also reported fatigue, cramping, worsening fibromyalgia, and pain knots in her joints (Tr. 241). On examination, Plaintiff had mildly reduced range of motion in her hands and back, as well as swelling in the joints of both hands (Tr. 241). Later that month, Plaintiff reported that she was still depressed and had diffuse pain throughout her body (Tr. 239). On examination, she appeared uncomfortable (Tr. 239).

In July 2011, Plaintiff began attending individual mental health therapy (Tr. 333). She discussed her difficulties with medical care and said he was in "a lot" of pain, which affected her mood (Tr. 333). She appeared irritated, stressed, and depressed (Tr. 333).

Plaintiff cancelled two therapy appointments in July and August 2011 (Tr. 331-32). She attended therapy again on August 31, 2011, and said she was stressed about her pending divorce (Tr. 330). She appeared depressed and anxious (Tr. 330).

On September 20, 2011, Plaintiff saw Kenton Goh, M.D., for a consultative examination (Tr. 296-99). After examining Plaintiff, Dr. Goh opined that, during an eight-hour day, Plaintiff could sit for six to seven hours and stand and walk for six hours (Tr. 299). Dr. Goh opined that Plaintiff could lift and carry 10 pounds frequently and up to 30 pounds occasionally (Tr. 299).

Also in September 2011, Plaintiff saw a doctor at Frontier Health for medication management (Tr. 328-29). She reported doing well with current medications, and she denied depression, sadness, crying spells, anxiety, and panic attacks (Tr. 328). The doctor observed that Plaintiff appeared to be benefitting from her current medications (Tr. 328). Plaintiff cancelled another therapy appointment later that month (Tr. 327).

Plaintiff contacted Frontier Health in November 2011 to request medication refills (Tr. 324). She reported "doing well on [her] current medications" (Tr. 324). She returned to Frontier Health the next month to receive medications through a prescription assistance program (Tr. 323). She denied any problems with her medications and denied any thoughts of suicide (Tr. 323).

In January 2012, at Frontier Health, Plaintiff denied any untoward side effects from her medications (Tr. 321). She reported increased depression and sadness, and she complained of fibromyalgia and arthritis pain (Tr. 321). She appeared depressed and sad and received a prescription for a new medication (Tr. 321). Over the next two months, Plaintiff continued to receive medications through the prescription assistance program (Tr. 318-20). She denied any problems with her medications and denied thoughts of suicide (Tr. 318-20).

In late March 2012, Plaintiff went to Frontier Health for medication management and reported minimal response to her new medication (Tr. 316). She continued to report chronic fibromyalgia pain and appeared depressed (Tr. 316). She did not want to change her prescription for Cymbalta, because "it helps my fibromyalgia too much" (Tr. 316). She received a prescription for an increased dose of another medication (Tr. 316).

At Frontier Health the next month, Plaintiff continued to report severe depression (Tr. 334). She admitted using marijuana to deal with stressors in her life, and the doctor encouraged her to keep close contact with her therapist instead of using marijuana to cope (Tr. 334). Plaintiff appeared depressed and received a prescription for a new medication (Tr. 315, 334).

In June 2012, Plaintiff saw Robert Boehm, M.D., for a new patient appointment (Tr. 337-39). Dr. Boehm noted that Plaintiff's fibromyalgia was "adequately treated" (Tr. 338).

Regarding depression, Plaintiff reported that she was seeing a counselor in Greeneville (Tr. 338). Plaintiff returned to Dr. Boehm the next month for a one-month followup appointment and complained of fibromyalgia and depression (Tr. 335). Plaintiff also reported trouble breathing, and Dr. Boehn prescribed an inhaler (Tr. 335-36).

[Doc. 16 pgs. 2-5].

This statement of the medical evidence did not include the findings of State Agency psychologists Drs. Donald E. Hinton (Tr. 278-294) and Andrew Phay (Tr. 311) although their findings were addressed in the argument portion of the Commissioner's brief. Dr. Hinton, after reviewing plaintiff's mental health records, opined that the plaintiff had various moderate limitations and concluded in his functional capacity assessment that the plaintiff

4

"can remember and understand simple instructions...," that "simple instructions can be executed and attention maintained for two hour intervals...," that "routine contact with the general public should not be a ususal job assignment...," and that "changes in the work environment should be well explained and gradual." Later in the process after reviewing later records not available to Dr. Hinton, Dr. Phay concurred completely in this evaluation.

At the administrative hearing, the ALJ had a vocational expert present, but elected not to ask her any questions (Tr. 35).

In his hearing decision, the ALJ found that the plaintiff had a severe physical impairment of osteoarthritis (Tr. 20). He then recounted plaintiff's testimony at the hearing. He then began to analyze the medical evidence, beginning with Dr. Burgin E. Dossett, Jr., M.D., who testified at the hearing as a "medical expert." Dr. Dossett had reviewed the plaintiff's file and listened to her testimony at the hearing. He stated that the records "primarily address psychological problems." The doctor concluded "that there are no demonstrated physical problems of significance and there is nothing in the record showing an etiology of neuropathy." (Tr. 21).

The ALJ then went over the plaintiff's treatment records, beginning with Frontier Health on December 27, 2010, which resulted in a diagnosis of "Major Depression, Recurrent, Severe without psychosis; and Genralized Anxiety Disorder." He noted she was placed on medication. He described the numerous other visits, 14 in all, with the last one on April 17, 2012. In those visits, her medication was adjusted, and progress was occasionally noted, although many times depression of varying, but mostly high, levels of intensity persisted. There were mentions of crying spells and sadness. On one visit she admitted to

5

smoking marijuana "to deal with the stressors in her life." The final visit in the record to this provider on April 18, 2012 "showed depressed mood with restricted affect." (Tr. 21-22).

Records were discussed of her treatment at the Church Hill Health Department, which involved medications for her arthritis, and numerous mentions of fibromyalgia with attendant pain and fatigue. Similar reports from the Cherokee Health System were mentioned. The consultative examination of Dr. Goh, ordered by the Tennessee Disability Determination Service, was discussed, noting that the plaintiff was tender in only 4 of the 18 fibromyalgia points. (Tr. 23).

He then concluded that the plaintiff's Major Depression and Generalized Anxiety Disorder "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." He based this upon his finding, contrary to the State Agency psychologists, that the plaintiff had only mild limitations in her activities of daily living, social functioning, and in maintaining concentration, persistence or pace. He noted that the plaintiff had not been hospitalized for psychiatric problems, and that "the record does not support a finding that the claimant is incapable of functioning independently outside the area of his *[sic]* home." He stated that "no treating source has indicated that the claimant has significant emotional problems." He said she showed improvement with appropriate treatment. He mentioned that "the record shows...that the claimant has not sought ongoing regular professional mental health treatment" and had not been treated since April 18, 2012. He stated that her marijuana use "diminished" plaintiff's

6

credibility.[1] He then noted that he disagreed with the State Agency psychologists opinions that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. He stated that her "difficulties in these areas appear to be primarily related to pain," and since he was concluding her complaints of pain were not totally credible, he was only giving the psychologists "partial weight." He did not mention their functional capacity assessment which restricted plaintiff to work which did not involve routine contact with the general public. (Tr. 24-25).

He then assessed her residual functional capacity ["RFC"] as being capable of the full range of medium work, which would involve many hours of standing and walking, frequently lifting and carrying up to 25 pounds, and lifting up to 50 pounds for up to a third of a work day (Tr. 25). He then found her not to be entirely credible, again noting her various diagnoses, her lack of sufficient "points" to sustain a diagnosis of fibromyalgia, and a lack of treatment from May 29, 2011 until June 14, 2012 for physical problems (Tr. 26).

He then stated that "evidentiary weight is not assigned" to the State Agency physicians who opined plaintiff had no physical impairments because "additional medical evidence at the hearing level reveals that the claimant is more limited than previously determined." He then found that her past relevant work as a cashier was not precluded by his RFC finding and that she was thus, not disabled (Tr. 27).

Plaintiff asserts that the ALJ erred in three respects. She takes issue with his failure to find that her fibromyalgia is a severe impairment. She also disputes his finding that she

---

[1] Other than the obvious fact that use of marijuana is a crime in Tennessee, exactly how this "diminishes" plaintiff's credibility in this context of whether she has a severe mental impairment is difficult to understand.

7

Case 2:14-cv-00130-JRG-DHI   Document 17   Filed 02/03/15   Page 7 of 10   PageID #: 432

was less that credible regarding her subjective complaints. Finally, she states that the ALJ's finding that she had could return to her past relevant work was not supported by substantial evidence in that it completely ignored her severe mental impairment and the medical evidence of the restrictions imposed by that impairment.

With respect to fibromyalgia, while the plaintiff was diagnosed with this condition, there is no dispute that medical evidence existed that she only was positive in 4 of the 18 fibromyalgia trigger points in the examination report of Dr. Goh. Also, Dr. Goh opined that the plaintiff could stand and walk for six hours and sit for six hours. Dr. Goh also opined that the plaintiff would only be able to lift a maximum of 30 pounds, which would limit her to light work. But the ALJ also had the opinion of Dr. Dossett that plaintiff had no physical problems of significance, and the reports of the State Agency physicians.[2] More importantly, the ALJ did in fact consider all of the plaintiff's complaints regarding her alleged fibromyalgia. However, based upon the medical evidence, he did not believe them.

The far more serious issue, however, deals with the finding that the plaintiff did not have a severe mental impairment. The *de minimis* hurdle was clearly met. "We have construed the step two severity regulation as a 'de minimis hurdle' in the disability determination process." *Griffeth v. Commissioner* 217 Fed. Appx. 425, 428 (6th Cir. 2007) citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). However, the Commissioner states that once an ALJ finds *any* severe impairment, he has a duty to consider the combined effects of all impairments in determining a claimant's RFC. The ALJ said he had "considered all

---

[2] Even though he did not give these doctors evidentiary weight, their opinions provide support for the RFC he did find of medium work, the limitation coming from her osteoarthritis.

8

symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence." (Tr. 25).

However, the problem is not that the ALJ did not understand his duty to consider all symptoms for which he found support. The problem is that he rejected *all* of the mental health evidence . He had no mental health professional backing up his finding. What filled this vacuum? The answer must be the ALJ's own opinion as a layman. It is certainly appropriate for an ALJ, or any other trier of fact, to believe or disbelieve evidence they find incredible. However, where there are, as here, *uncontradicted* medical opinions, the ALJ cannot simply disregard them and substitute his or her lay opinion for that of psychological professionals.

Here, the State Agency psychologists not only opined that the plaintiff had a mental impairment, they also verbalized what their opinion was as to the effect that the condition would have on the plaintiff's work-related activities, finding in part that "routine contact with the general public should not be a usual job assignment." (Tr. 294). Obviously, a cashier would *primarily* interact with the general public as one of his or her main responsibilities.

Therefore, the Court finds that the Commissioner's decision was not substantially justified. However, the Court cannot say that the plaintiff is, in fact, disabled. The case should be remanded, at the very least, for a vocational expert to consider whether jobs exist for the plaintiff if routine contact with the general public should not be a usual job assignment and if corrective instruction should be presented supportively, as opined by the State Agency. Also, as a suggestion only and not a requirement, a consultative psychological examination may shed more light on the plaintiff's mental limitations. To this end, it is

9

recommended that the plaintiff's Motion for Judgment on the Pleadings be GRANTED, and the defendant Commissioner's Motion for Summary Judgment be DENIED.[3]

Respectfully submitted,

   s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

10